Carolyn Goldman (AZ Bar No. 016440)
Mark D. Goldman (AZ Bar No. 012156)
Scott H. Zwillinger (AZ Bar No. 019645)
Joseph V. Aulicino (AZ Bar No. 032836)
**GOLDMAN & ZWILLINGER PLLC**
17851 North 85th Street, Suite 175
Scottsdale, AZ  85255-6567
Main:  (480) 626-8483
Facsimile:  (480) 502-7500
Main court material email:
*docket@gzlawoffice.com*
Attorneys for Plaintiff
Sierra Resource, LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra Resource, LLC, an Arizona limited liability company, | Case No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| v. | |
| Jon Rattray, a/k/a Jon R. Rattray and Jane Doe Rattray, husband and wife; Hawkeye Real Estate Services, LLC, an Arizona limited liability company; Arizona Mound Company, LLC, an Arizona limited liability company; Jonathan Ladd and Jane Doe Ladd, husband and wife; Rafael Bautista Navarrete and Jane Doe Navarrete, husband and wife; Ralph Dan Ashworth and Deborah Suzanne Ashworth, husband and wife; Leonard Mattingly and Michelle Mattingly, husband and wife; Carl D. Hughes and Cecelia D. Hughes, husband and wife; William Maynard Thyng and Jane Doe Thyng, husband and wife; | |

Donald D. Burr and Kara L. Burr, husband and wife;

Daniel C. Hall and Jane Doe Hall, husband and wife;

Troy Poitra and Jane Doe Poitra, husband and wife;

Maria M. Rivero and John Doe Rivero, wife and husband;

Richard Sandoval and Jane Sandoval, husband and wife;

Optimist DOT LLC, an Arizona limited liability company;

Reed H. Kleinman and Alysa M. Kleinman, husband and wife;

Zachary McKeown and Kristen C. Seaborg, unmarried joint purported title holders;

Daryl W. Utt and Linda S. Utt, husband and wife;

Maurice Bell and Jane Doe Bell, husband and wife;

IH6 Property Phoenix, LP, a Delaware limited partnership;

Parris B. Castillo and Jane Doe Castillo, husband and wife;

Alexandra Gergen and Michael Gergen, wife and husband;

Jeanette M. Sabo and James E. Sabo, wife and husband;

If any, John and Jane Does and XYZ Entities,

Defendants.

## **COMPLAINT**

Plaintiff, Sierra Resource, LLC, by and through its attorneys, Goldman & Zwillinger PLLC, hereby submits its Complaint against Defendants as follows:

2

### The Parties

1. Plaintiff, Sierra Resource, LLC ("Plaintiff"), is a limited liability company organized under the laws of the state of Arizona.

2. Plaintiff's offices are located in Maricopa County, Arizona.

3. Plaintiff is licensed by the Arizona Department of Financial Institutions as a mortgage banker.

4. Plaintiff is a "mortgage lending business" as defined in Title 18 United States Code Section 27.

5. As a mortgage lending business, Plaintiff is also a financial institution as defined in 18 U.S.C. §20(10) and as the term financial institution is applied in 18 U.S.C. §1344 – the federal criminal "bank fraud" statute.

6. Plaintiff funds business purpose loans which are secured by residential real property to borrowers who represent in writing that the sole purpose of the loan is a business investment and not for the borrower to occupy as a residence.

7. Defendant, Jon Rattray ("Rattray"), is an individual who resides in Maricopa County.  He is also known as Jon R. Rattray.

8. As of the time of filing this Complaint, Rattray informed Plaintiff's manager and sole member, Eric Sheldahl, that he is traveling outside the United States of America ("US") and may be presently found in the United Kingdom ("UK").

9. Rattray operates and/or participates in the operation of multiple businesses in multiple states.

10. In addition to those businesses operating in the state of Arizona, Rattray personally owns or owns in the name of various business entities which he controls primarily or exclusively, real estate and other assets in at least the state of Illinois and the state of Iowa.

11. Rattray regularly travels throughout the US including to Chicago, Illinois and locations in the state of Florida.

12. Defendant, Hawkeye Real Estate Services, LLC ("Hawkeye"), is a limited liability company organized under the laws of Arizona.

13. Hawkeye's primary place of business is located in Maricopa County, Arizona.

14. Rattray is the sole member of Hawkeye.

15. Hawkeye is a member-managed LLC.

16. Rattray is the primary operator of Hawkeye.

17. Defendant, Arizona Mound Company LLC ("Arizona Mound"), is a limited liability company organized under the laws of Arizona.

18. Arizona Mound operates from offices in Arizona and in Iowa.

19.  Rattray is one of the managers of Arizona Mound.

20. Defendant, Jonathan Ladd ("Ladd"), is an individual who resides in Maricopa County.

21. Ladd is commissioned as a Notary Public by the State of Arizona.

22. Public records of the Arizona Secretary of State reveal that Ladd claims he is associated with and/or employed by Arizona Mound.

4

23. Plaintiff shall refer to Rattray, Hawkeye, Arizona Mound and Ladd as the "Primary Defendants" in this Complaint, including employment of that term when at least one and less than all of them committed an act on behalf of all of them.

24. The most recently available public records of Maricopa County identify Defendant Rafael Bautista Navarrete as the owner of real property known and numbered as 2318 W Maldonado Drive, Phoenix, Arizona 85041 ("Stolen Parcel 1").

25. The most recently available public records of Maricopa County identify Defendants Ralph Dan Ashworth and Deborah Suzanne Ashworth, husband and wife, as the owners of real property known and numbered as 3755 E Broadway Road, #24, Mesa, Arizona 85206 ("Stolen Parcel 2").

26. The most recently available public records of Maricopa County identify Defendants Leonard Mattingly and Michelle Mattingly, husband and wife, as the owners of real property known and numbered as 5426 W Harwell Rd., Laveen, Arizona 85339 ("Stolen Parcel 3").

27. The most recently available public records of Maricopa County identify Defendants Carl D. Hughes and Cecelia D. Hughes, husband and wife, as the owners of real property known and numbered as 354 W Thompson Place, Chandler, Arizona 85286 ("Stolen Parcel 4").

28. The most recently available public records of Maricopa County identify Defendant William Maynard Thyng as the owner of real property known and numbered as 2244 W Highland Street, Chandler, Arizona 85224 ("Stolen Parcel 5").

29. The most recently available public records of Maricopa County identify Defendants Donald D. Burr and Kara L. Burr, husband and wife, as the owners of real property known and numbered as 11048 N 28th Drive, #148C, Phoenix, Arizona 85029 ("Stolen Parcel 6").

30. The most recently available public records of Maricopa County identify Defendant Daniel C. Hall as the owner of real property known and numbered as 1711 E Missouri Avenue, #11, Phoenix, Arizona 85016 ("Stolen Parcel 7").

31. The most recently available public records of Maricopa County identify Defendant Troy Poitra as the owner of real property known and numbered as 437 N St Claire Circle, Mesa, Arizona 85207 ("Stolen Parcel 8").

32. The most recently available public records of Maricopa County identify Defendant Maria M. Rivero as the owner of real property known and numbered as 7234 S 48th Glen, Laveen, Arizona 85339 ("Stolen Parcel 9").

33. The most recently available public records of Maricopa County identify Defendants Richard Sandoval and Jane Sandoval, husband and wife, as the owners of real property known and numbered as 1150 W Saragosa Street, Chandler, Arizona 85224 ("Stolen Parcel 10").

34. The most recently available public records of Maricopa County identify Defendant Optimist DOT LLC, an Arizona limited liability company, as the owner of real property known and numbered as 1371 W Butler Drive, Chandler, Arizona 85224 ("Stolen Parcel 11").

35.  The most recently available public records of Maricopa County identify Defendants Reed H. Kleinman and Alysa M. Kleinman, husband and wife, as the owners of real property known and numbered as 3060 E Hermosa Vista Drive, Mesa, Arizona 85213 ("Stolen Parcel 12").

36.  The most recently available public records of Maricopa County identify Defendants Zachary McKeown and Kristen C. Seaborg, not married persons as the owners of real property known and numbered as 1818 West Alamo Drive, Chandler, Arizona 85224 ("Stolen Parcel 13").

37.  The most recently available public records of Maricopa County identify Defendants Daryl W. Utt and Linda S. Utt, husband and wife, as the owners of real property known and numbered as 3236 E Chandler Blvd, Phoenix, 85048 ("Stolen Parcel 14").

38.  The most recently available public records of Maricopa County identify Defendant Maurice Bell as the owner of real property known and numbered as 618 Dekalb Lane, Phoenix, Arizona 85040 ("Stolen Parcel 15").

39.  The most recently available public records of Maricopa County identify Defendant IH6 Property Phoenix, LP, a Delaware limited partnership, as the owner of real property known and numbered as 4093 E Jasper Drive, Gilbert, Arizona 85296 ("Stolen Parcel 16").

40. The most recently available public records of Maricopa County identify Defendant Parris B. Castillo as the owner of real property known and numbered as 440 N Rochester Street, Mesa, Arizona 85205 ("Stolen Parcel 17").

41. The most recently available public records of Maricopa County identify Defendants Alexandra Gergen and Michael Gergen, wife and husband, as the owners of real property known and numbered as 3757 E Hopi Ave., Mesa, Arizona, 85206 ("Stolen Parcel 18").

42. The most recently available public records of Maricopa County identify Defendants Jeanette M. Sabo and James E. Sabo, wife and husband, as the owners of real property known and numbered as 1351 N Pleasant Drive, Chandler, Arizona, 85225 ("Stolen Parcel 19").

43. Defendants identified in Paragraphs 24 through 42 shall be referred to in this Complaint as "Invalid Title Holder Defendant(s)[1]."

44. Plaintiff believes that some, even many, of the Invalid Title Holder Defendants have obtained loans secured by deeds of trust encumbering their respective Stolen Parcel; Plaintiff is investigating these matters is just beginning and Plaintiff expects that it may have to amend this Complaint to add the holders of such deeds of trust since Plaintiff's claims would affect the rights of such parties.

---

[1] When referencing individual and/or groups of Invalid Title Holder Defendants, Plaintiff shall refer to them by the number correlating to their Stolen Parcel Number in the designation of them as a party; for example, "Invalid Title Holder Defendant 1" shall be employed when referencing Defendant Rafael Bautista Navarrete, since he is identified as the Defendant associated with Stolen Parcel Number 1.

45. Plaintiff has named the following unknown spouses in this complaint:

    a.  Jane Doe Rattray

    b.  Jane Doe Ladd

    c.  Jane Doe Navarrete

    d.  Jane Doe Thyng

    e.  Jane Doe Hall

    f.  Jane Doe Poitra

    g.  Jane Doe Rivero

    h.  Jane Doe Bell

    i.  Jane Doe Castillo

46. The unknown spouses listed are named to represent the wife of known parties and are joined in this action to bind and determine the liability of the parties' marital community.  At all times relevant hereto, each known party was acting for his own benefit and for the benefit of, or in furtherance of, his marital community.

47. Defendants, John Does and Jane Does and XYZ Entities are named to represent additional parties who conspired with, or aided and abetted, the Defendants or otherwise participated in the fraudulent transfers and whose names may be learned through discovery or otherwise.

## **Jurisdiction and Venue**

48. Plaintiff has stated a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") premised upon civil claims actionable pursuant 18

U.S.C. §1964, and therefore this court has original jurisdiction of this action pursuant to 28 U.S.C. §1331.

49.   The remainder of Plaintiff's claims arise under state law and for which US district courts do not have original jurisdiction; however, those state law claims are so related to the claims for which the US district courts do have original jurisdiction that those claims form part of the same case or controversy, and therefore the US district courts have supplemental jurisdiction over those other claims under this court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

50.   The Primary Defendants reside in Maricopa County, a substantial part, if not all, of the events or omissions giving rise to the claims occurred in and all of the real property that is subject to this action is situated in Maricopa County; therefore, the venue in this Court is proper for this action pursuant to 28 U.S.C. §1391(b)(1) and (2), and pursuant to 28 U.S.C. §82.

**Introduction and Outline of Scheme by Primary Defendants**

51.   Plaintiff discovered the criminal scheme described in this Complaint less than one week before the filing of this Complaint.  Plaintiff, and its sole member – Eric Sheldahl ("Mr. Sheldahl") - and its attorneys filing this Complaint engaged in extensive and urgent research and investigation into the facts relevant to this Complaint.  Plaintiff and its attorneys do not believe they have fully discovered all of the methods or even the extent of the Primary Defendants', and others not yet known, execution of the scheme, and they fully expect that amendments to this

Complaint will be required as additional information is discovered.  However, each allegation in this Complaint is supported by already known facts and based on evidence already secured.

52.  As described more particularly in the paragraphs which follow, Primary Defendants used criminal means, fraudulent conduct, wire communications, including telephone, email and facsimiles, and/or the US Postal Service in a scheme by which they stole from Plaintiff, and/or assisted the other Primary Defendants to steal from Plaintiff, the approximate principal sum of $2,357,012.

53.  The money and real property interest stolen from Plaintiff by Primary Defendants is traceable to the money borrowed by Primary Defendants, or at least one of them and for the ultimate benefit of all of them, for the purchase of real estate, with those loans secured by deeds of trust.

54.  Primary Defendants forged releases of the deeds of trust and recorded these forged releases of the deeds of trust with the Maricopa County Recorder's Office.

55.  The forgeries and fraudulent records enabled Primary Defendants to purportedly sell and transfer the subject real estate as if the loans from Plaintiff had been paid.

56.  A forged document cannot pass title or release an interest in real estate as a matter of law.

57.  Primary Defendants received the proceeds of the sales.

58.  Primary Defendants did not repay the subject loans to Plaintiff.

59. Primary Defendants concealed the forgeries by continuing to pay the underlying loan payments to Plaintiff via wire transfers, communicating the continuing intent to pay, and recognizing the validity of loans and deed of trust via telephone, email and facsimile even after they (purportedly) sold the properties to other persons, took the proceeds of those sales and used the money for purposes other than paying Plaintiff the amount owed to Plaintiff.

60. Primary Defendants further concealed the forgeries by executing loan extension agreements, and communicating about the loan extension agreements via telephone, email and facsimile after they had already forged and recorded the releases of the Deeds of Trust and after the (purported) sales to other persons, took the proceeds of those sales and used the money for purposes other than paying Plaintiff the amount owed to Plaintiff.

**Specific Facts Common to More than One Count**

61. Plaintiff operates as a funding source for business purpose real estate loans for property situated in Maricopa County.

62. Rattray and Hawkeye were in the business of, among other things, purchasing real estate, distressed and otherwise, performing varying degrees of renovations or not, and either renting the property or selling ("flipping") the property.

63. Plaintiff operated as a funding lender for real estate loans to Primary Defendant Hawkeye for, relevant to this Complaint, the purchase by Primary Defendant

Hawkeye of nineteen (19) parcels of real estate located in Maricopa County ("Plaintiff Loan(s)").

64. For each Plaintiff Loan, Primary Defendants executed promissory notes ("Notes") as evidence of the Loan.

65. For each Plaintiff Loan, Primary Defendants executed a Deed of Trust and Assignment of Rents ("DoT(s)") as security for the loan and by which Primary Defendants conveyed title to the subject property to Plaintiff, held in trust by an assigned trustee.

66. For each of the Plaintiff Loans, Primary Defendants requested and Plaintiff agreed to amendments to the promissory notes by which Plaintiff agreed to extend the maturity date of the original or last prior end term for the subject Promissory Note and Plaintiff Loan ("Loan Extension(s)").

67. Plaintiff and Primary Defendants routinely entered into Loan Extensions, entering into dozens of them in the normal course of the business with each other from in or about until immediately preceding the filing of this Complaint in 2018.

68. Starting no later than December 23, 2015, but unknown to Plaintiff until less than one week before the date of filing of this Complaint, Primary Defendants began execution of their criminal, devious, fraudulent and brash series of acts by which Primary Defendants, using unlawful means and for unlawful purposes, caused purported purchases, the lenders for such persons and title companies, to believe that the Plaintiff Loan for the subject property had been satisfied and the lien

released, and then Primary Defendants concealed those acts by additional fraudulent and illegal acts.

69.  For Stolen Parcels 1 through 18 Primary Defendants forged the signature of Plaintiff's member and agent – Eric Sheldahl ("Sheldahl") -  on Deeds of Full Release and Reconveyance ("Forged Release(s)") as their method for duping the buyers, lenders and title companies into the false belief that the Plaintiff Loan had been satisfied.

70.  Primary Defendants caused to be signed the first located Recorded Forged Release on March 16, 2016, and the last of them, five (5) on the same date, November 8, 2016, all executed by Rattray and notarized by Ladd.

71.  Primary Defendants caused to be Recorded the first Forged Release on March 21, 2016, and the last of them, five (5) on the same date, November 10, 2016.

72.  The Forged Releases all purport to bear the signature of Mr. Sheldahl on behalf of Plaintiff.

73.  Ladd served as the Notary on all of the Forged Releases.

74.  Mr. Sheldahl never utilized Ladd as a Notary on any document, including without limitation, valid releases.

75.  Neither Mr. Sheldahl nor anyone else on behalf of Plaintiff authorized anyone to sign the Forged Releases.

76.   As evidence that Mr. Sheldahl did not sign the Forged Releases, Plaintiff retained
a handwriting expert, Rosemarie Urbanski ("Expert Urbanski") to review the
Forged Releases.

77.   Expert Urbanski concluded that it is probable that Mr. Sheldahl did not execute the
Forged Releases.

78.   Primary Defendants fraudulently recorded or directed the recording of the Forged
Releases with the Maricopa County Recorder of Deeds ("Recorded" or
"Recording").

79.   Primary Defendants recorded Forged Releases for the parcels of real estate listed
and described in the attached Exhibit 1 ("Stolen Real Estate").

80.   Primary Defendants recorded the Forged Releases for the Stolen Real Estate by
electronic communication to the Maricopa County Recorder, using the Recorder's
electronic ("online") recording service.

81.   Every Recording of a Forged Release by Primary Defendants was an act of wire
fraud as provided by federal law, including, but not limited to 18 U.S.C. §1343
("Wire Fraud").

82.   For Stolen Parcel 2, Primary Defendants Recorded the Forged Releases by "Paper
Recording."

83.   Every act by Primary Defendants of creating a Forged Release – and there were at
least eighteen (18) of them – whether Recorded electronically or "paper" was an
act of bank fraud as defined in 18 U.S.C. §1344 since each was a knowingly

committed execution for the purpose of *both* defrauding a financial institution (in violation of 18 U.S.C. §1344(1)) *and* for the purpose of obtaining money, and/or funds and/or credits and/or assets owned by or under the control of a financial institution (in violation of 18 U.S.C. §1344(2).)

84.   The Forged Releases were created by the individuals Rattray (forged signatures) and Ladd (false notarizations of the forged signatures.)

85.   The Forged Releases were created at the direction of and/or on behalf of Hawkeye and/or Arizona Mound.

86.   For Stolen Parcel 19 Plaintiff has not yet discovered whether Primary Defendants Recorded a Forged Release, or how Primary Defendants were otherwise able to purportedly sell it without satisfaction of the Plaintiff Loan and/or valid release of the DoT for Parcel 19.

87.   Primary Defendants committed no fewer than seventeen (17) distinct acts of Wire Fraud in the form of electronic recording of the Forged Releases with the Recorder, for Stolen Parcel 1 and Stolen Parcels 3 through 18.

88.   The Recorded Forged Releases purported to extinguish and terminate the DoTs and thus purported to grant Primary Defendants unencumbered full title to the Stolen Real Estate, including the purported right of Primary Defendants to sell, convey, transfer, further encumber or otherwise further attempt to purportedly cloud or terminate Plaintiff's lawful interests in the Stolen Real Estate.

89.   Primary Defendants executed Warranty Deeds by which it purported to transfer title to other persons, natural and otherwise, every parcel of Stolen Real Estate to other persons ("Invalid Sale(s)").

90.   The first Invalid Sale occurred on or about December 23, 2015, including by a Warranty Deed executed by Rattray on behalf of Hawkeye on December 17, 2015.

91.   Primary Defendants received payment from the purported purchasers for the Invalid Sales, in the amounts as followed according to public records:

   a.   $202,000 for Stolen Parcel 1,

   b.   $140,000 for Stolen Parcel 2,

   c.   $195,000 for Stolen Parcel 3,

   d.   $316,000 for Stolen Parcel 4,

   e.   $237,000 for Stolen Parcel 5,

   f.   $68,000 for Stolen Parcel 6,

   g.   $173,000 for Stolen Parcel 7 (conveyed to Arizona Mound by Hawkeye for $0 payment, then "sold" by Arizona Mound),

   h.   $155,000 for Stolen Parcel 8,

   i.   $158,000 for Stolen Parcel 9,

   j.   $218,000 for Stolen Parcel 10,

   k.   $210,000 for Stolen Parcel 11,

   l.   $248,300 for Stolen Parcel 12,

   m.  $305,000 for Stolen Parcel 13,

n.  $174,900 for Stolen Parcel 14,

o.  $180,000 for Stolen Parcel 15 (conveyed to Arizona Mound for $0

payment – but possibly subject to a purported $92,000 note, then "sold" by

Arizona Mound),

p.  $164,000 for Stolen Parcel 16,

q.  $133,000 for Stolen Parcel 17,

r.  $175,000 for Stolen Parcel 18, and

s.  $105,900 for Stolen Parcel 19,

for a total amount received by Primary Defendants for the Stolen Parcels of

$3,558,100.

92.  Primary Defendants did not pay off the Plaintiff Loan associated with secured by

any of the parcels either at the time of the Invalid Sale or at any time after the

Invalid Sale, and the balances of the Plaintiff Loans unpaid currently are:

a.  $113,760 for Stolen Parcel 1,

b.  $97,600 for Stolen Parcel 2,

c.  $122,400 for Stolen Parcel 3,

d.  $200,000 for Stolen Parcel 4,

e.  $150,000 for Stolen Parcel 5,

f.  $50,000 for Stolen Parcel 6,

g.  $100,000 for Stolen Parcel 7,

h.  $120,000 for Stolen Parcel 8,

i.  $96,080.00 for Stolen Parcel 9,

j.  $172,800 for Stolen Parcel 10,

k.  $172,800 for Stolen Parcel 11,

l.  $193,000 for Stolen Parcel 12,

m.  $160,000 for Stolen Parcel 13,

n.  $115,600 for Stolen Parcel 14,

o.  $67,200 for Stolen Parcel 15,

p.  $122,560 for Stolen Parcel 16,

q.  $105,600 for Stolen Parcel 17,

r.  $128,572 for Stolen Parcel 18, and

s.  $69,040 for Stolen Parcel 19,

for a total unpaid principal balance owed to Plaintiff of $2,357,012, which does not include late payments, unpaid interest, collection costs or the attorney fees and litigation costs of this action.

93.  Primary Defendants concealed the Forged Releases and the Invalid Sales by continuing to "make payments" on the underlying Plaintiff Loans, after the Forged Releases and before and after the Invalid Sales, even after Primary Defendants received and concealed the proceeds from the Invalid Sales (these post-Forged Release "payments" are referred to here as "Concealment Payments.")

94.  Primary Defendants paid the Concealment Payments to prevent detection of their earlier Forged Release and the Recording of them.

19

95. Primary Defendants paid the first Concealment Payment no earlier than December 23, 2015, and no later than January 31, 2016, by the first payment to Plaintiff which included the payment due for the first Stolen Parcel after the first Invalid Sale (which occurred no later than December 23, 2015.)

96. Primary Defendants paid the most recent Concealment Payment in or about March, 2018.

97. Plaintiff has not yet calculated the number of Concealment Payments since they were combined into consolidated payments on multiple Plaintiff Loans, some of which were not yet at the time related to a Stolen Real Estate parcel, however there were, *at minimum* seven (7) Concealment Payments by Primary Defendants.

98. Every Concealment Payment was a separate act of fraud by Primary Defendants against Plaintiff.

99. The purpose of every Concealment Payment was to defraud a financial institution as prohibited by 18 U.S.C. 1344(a), so that Primary Defendants committed no fewer than seven (7) acts of wire fraud for those Concealment Payments.

100. The Concealment Payments were paid by electronic payment by Primary Defendants to Plaintiff and as such those electronic Concealment Payments were acts of Wire Fraud in violation of 18 U.S.C. §1343.

101. Primary Defendants further concealed the Forged Releases and the Invalid Sales by executing Loan Extensions on Plaintiff Loans for property which Primary Defendants had already recorded the Forged Release and received and concealed

the proceeds from the Invalid Sale for the subject property (these post-Forged

Release Loan Extensions are referred to here as "Concealment Extensions.")

102. Primary Defendants executed no fewer than 37 Concealment Extensions, with at

least one Concealment Renewal for every parcel of Stolen Real Estate.

103. The majority of the Concealment Renewals were either created by or were

requested by Primary Defendants and/or agreed to by Plaintiff utilizing electronic

communication, so that each such Concealment Renewal was an act of Wire Fraud

in violation of 18 U.S.C. §1343.

104. Each of the (no fewer than 37) Concealment Renewals, regardless of the mode of

communication and/or transmission, was an act of financial institution fraud in

violation of 18 U.S.C. §1344.

105. Some of the Stolen Real Estate parcels were sold by the purchasers in the Invalid

Sale to subsequent purchasers ("Subsequent Invalid Sale(s)").

106. The unilateral and unlawful Forged Releases do not as a matter of law extinguish

Plaintiff's interest in the Stolen Real Estate.

107. A forged document cannot pass title or extinguish an interest in real estate even if

a bona fide purchaser is involved.

108. Plaintiff's security interests in the Stolen Real Estate remain enforceable.

109. The interests of the Invalid Title Holder Defendants 1 through 19 are adverse to

Plaintiff's interests since Plaintiff asserts that its DoTs remain as valid liens on

Stolen Real Estate parcels 1 through 19.

110. Plaintiff's DoTs are superior in priority to any liens encumbering any of the Stolen Real Estate parcels created after the date of the respective DoT for each such parcel.

111. Rattray and Hawkeye are in privity of contracts between them and Plaintiff, including, but not limited to for each parcel for Stolen Real Estate parcels 1 through 19:

    a.  DoT,

    b.  Promissory Note, providing for, among other things, interest at the rate of 15% per annum if not in default and the rate of 29% per annum, late charges of 10% of the amount due, and

    c.  Personal Guaranty,

collectively the three (3) contracts for each of the nineteen (19) parcels of Stolen Real Estate.

112. The Promissory Notes provide for acceleration of the amounts due upon default.

113. Violations of obligations under the DoT constitutes a default pursuant to the Promissory Notes.

114. Primary Defendants violated the DoTs by executing the Forged Releases and/or by the entering into fraudulent transactions by which Primary Defendants sought to unlawfully render the DoTs useless.

115. Primary Defendants paid Concealment Payments in electronic form utilizing Federal Deposit Insurance Corporation ("FDIC") insured banks, including:

a.  JP Morgan Chase Bank, National Association,

b.  Great Western Bank, and

c.  MidFirst Bank.

116. JP Morgan Chase Bank, National Association is a federally chartered National Bank and regulated by the Office of the Comptroller of the Currency.

117. MidFirst Bank is a federally chartered Savings Association and regulated by the Office of the Comptroller of the Currency.

118. Arizona Mound paid some of the Concealment Payments.

119. Hawkeye paid the remainder Concealment Payments.

120. In furtherance of the scheme described in this Complaint and to (a) prevent its detection and (b) keep the stolen funds, Primary Defendants transmitted electronic mail to Plaintiff in Arizona from outside Arizona, including from the:

a.  United Kingdom,

b.  State of Iowa,

c.  State of Illinois, as well as from

d.  "Out east" in the US,

e.  Open waters at sea while on a cruise, and

f.  Elsewhere outside of Arizona.

121. Plaintiff retained the undersigned attorneys to represent it in this matter and Plaintiff has and shall continue to incur attorney fees and litigation costs relating to this matter.

122. Primary Defendants have pursued a course of conduct as described, herein, with the intent to injure Plaintiff and/or consciously pursued a course of conduct knowing that it created a substantial risk of serious harm to Plaintiffs.

123. Primary Defendants acted with an evil mind.

124. Primary Defendants' conduct was aggravated, outrageous, malicious and/or fraudulent, as described herein.

**COUNT I**

**CIVIL CLAIM FOR DAMAGES FOR**

**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)**

125. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

126. 18 U.S.C. §1964(a) permits this Court to prevent and restrain violations of 18 U.S.C. §1962, including but not limited to ordering any person to divest himself or herself of any interest in any enterprise.

127. 18 U.S.C. §1964(a) permits this Court to impose reasonable restrictions on future activities or investments of any person.

128. 18 U.S.C. §1964(a) permits this Court to make due provisions for the rights of innocent persons.

129. Plaintiff is an innocent person as the term is employed in 18 U.S.C. §1964(a).

130. Plaintiff suffered injuries to its business and property.

131. As a direct and proximate result of Primary Defendants' racketeering activities and violations of 18 U.S.C. §1962(c), Plaintiff has been injured in its business by the purported loss of its beneficial in the Stolen Parcels in an unknown amount, but not less than the amounts due on the subject Notes, which totals $2,357,012, plus interest, penalties, attorney fees and litigation costs.

132. 18 U.S.C. §1964(c) permits this Complaint for violation of the 18 U.S.C. §1962 and that Plaintiff shall recover threefold its damages, costs of this suit and attorney fees.

133. Rattray, Hawkeye, Arizona Mound and Ladd (Primary Defendants as defined above) are "persons" as defined in 18 U.S.C. §2.

134. Rattray, Hawkeye, Arizona Mound and Ladd when acting together in the schemes described in this Complaint constitute an "enterprise" as defined in 18 U.S.C. §1961(4).

135. Rattray acted in concert with Hawkeye, Arizona Mound and Ladd and committed no fewer than 61 independent acts of wire fraud (17 Forged Releases Recordings recorded electronically, at least 37 Concealment Extensions which were secured using electronic mail and text messaging to secure agreement for the same, and at least 7 Concealment Payments paid electronically.)

136. Rattray acted in concert with Hawkeye, Arizona Mound and Ladd and committed no fewer than eighteen (18) acts of bank fraud by, at minimum, participating in the

execution of the fraudulent Forged Releases (for Stolen Parcels 1 through 18, with no release being found at the time of this Complaint for Stolen Parcel 19.)

137. The acts of Primary Defendants were intended to and in fact did affect interstate commerce.

138. Primary Defendants associated with each other for the illegal purpose of purportedly selling real estate - Stolen Parcels 1through 19 - to third parties, some of whom subsequently conveyed the Stolen Parcel to second purported buyers - Invalid Title Holder Defendants 1 through 19.

139. The facts as plead in this Complaint demonstrate racketeering activity by acts constituting wire fraud pursuant to 18 U.S.C. §1343 and bank (financial institution) fraud pursuant to 18 U.S.C. §1344.

140. The facts as plead demonstrate that Primary Defendants repeatedly engaged in acts of racketeering activity as defined in 18 U.S.C. §1961(1).

141. Primary Defendants engaged in the same racketeering activity described in this Complain repeatedly – using essentially the same methods to commit their misconduct over and over again (at least 19 sets of such), so that Primary Defendants engaged in a pattern of racketeering activity as defined in 18 U.S.C. §1961(5).

142. Primary Defendants each received benefits from the racketeering activities described in this Complaint in violation of 18 U.S.C. §1962(a).

143. Primary Defendants each used income from the racketeering activities described in this Complaint in violation of 18 U.S.C. §1962(a).

144. Primary Defendant used the proceeds from the racketeering activities described in this Complaint for the operation of enterprises engaged in and/or which affect interstate commerce in violation of 18 U.S.C. §1962(a).

145. Through a pattern of racketeering activity, Rattray directly or indirectly acquired or maintained control over an enterprise which engages in interstate commerce in violation of 18 U.S.C. §1962(b).

146. Rattray and Ladd are associated with enterprises which engaged in activities which affect interstate commerce and both conducted and participated in the conduct of the affairs of those enterprises through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

147. The facts as plead in this Complaint demonstrate that Primary Defendants' acts were:

    a.  A plan or scheme to defraud,

    b.  With intent to defraud,

    c.  Together with the knowledge that the "wires" will be used,

    d.  Together with the knowledge that the acts were targeted against a financial institution, and

    e.  Involved the actual use of the "wires" and actually damaged a financial institution.

# COUNT II

## TITLE 33 - PROPERTY- ARIZONA REVISED STATUTES [A.R.S. §33-420]

148. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

149. Pursuant to §33-420 under Title 33 of the Arizona Revised Statutes,

   A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

   B. The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. In either case, the owner or beneficial title holder may recover reasonable attorney fees and costs of the action if he prevails.

150. With regard to at least eighteen (18) of the Stolen Parcels, Primary Defendants forged the signature of Plaintiff's manager and member and agent Eric Sheldahl on Deeds of Full Release and Reconveyance—the Forged Releases—as their method for duping the buyers, lenders and title companies into the false belief that the corresponding Plaintiff Loans had been satisfied. The Forged Releases were created by the individuals Rattray (forged signatures) and Ladd (false notarizations of the

forged signatures), and at the direction of and/or on behalf of Hawkeye and/or Arizona Mound.

151. Primary Defendants recorded and/or caused to be recorded the Forged Releases with the Maricopa County Recorder's Office purporting to claim an interest in the Stolen Parcels.

152. Primary Defendants knew and/or had reason to know that the Forged Releases were forged, groundless, contained material misstatements and/or false claims and were otherwise invalid prior to and/or at the time they recorded and/or caused to have recorded the Forged Releases with the Maricopa County Recorder's Office.

153. Plaintiff's DoTs are superior in priority to any liens encumbering any of the Stolen Real Estate parcels created after the date of the respective DoT for each such parcel.

154. Primary Defendants' acts and conduct violated A.R.S. §33-420.

155. As a direct and proximate result of Primary Defendant's violation of A.R.S. §33-420, Plaintiff has suffered damages and is entitled to recover those damages including, but not limited to, those provided under A.R.S. §33-420.

156. Plaintiff is entitled to such relief to immediately clear title to the Stolen Parcels including, without limitation, an Order that: (i) the Forged Releases are null and void and of no force and effect, (ii) all transfers and encumbrances of the Stolen Parcels made after the dates of recordation of the Forged Releases, or based on the associated fraudulent conduct of the Primary Defendants, are also null and avoid

and of no force and effect, (iii) such that it is declared Plaintiff has the only true legal title to said properties.

## COUNT III

## **BREACH OF CONTRACT**

152. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

153. Primary Defendants Hawkeye and Rattray entered into contractual relationships with Plaintiff, including for the benefit of Plaintiff, and were required to perform their contractual obligations under the Promissory Notes, the Deeds of Trust, the Guaranties, and the Loan Extensions (collectively, the "Agreements").

154. Primary Defendants Hawkeye and Rattray breached the express terms of the Agreements and failed to fulfill their contractual duties owed to Plaintiff when, by example and without limitation, Primary Defendants did not repay the subject Loans to Plaintiff, created the Forged Releases and recorded them and/or caused them to be recorded, and took the proceeds from the Invalid Sales and did not pay off the Plaintiff Loans, either at the time of the Invalid Sales or at any time after the Invalid Sales, and, instead, caused balances on the Plaintiff Loans to currently remain outstanding, past due and unpaid.

155. As a direct and proximate result of Primary Defendants' breaches of the Agreements, Plaintiff has suffered actual, consequential, and incidental damages.

156. As a direct and proximate result of Primary Defendant's breaches, Plaintiff is entitled to damages and its remedies including, but not limited to, those provided under the Agreements in an amount to be proven at trial demonstrated in this action.

## COUNT IV

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

157. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

158. A covenant of good faith and fair dealing is implied in every contract. Primary Defendants breached this covenant in connection with the Agreements when, without limitation, Primary Defendants created the Forged Releases and had them recorded or caused to have them recorded, concealed the Forged Releases and the Invalid Sales, signed and obtained the Loan Extensions and continued to "make payments" on the underlying Plaintiff Loans after the Forged Releases and before and after the Invalid Sales, even after Primary Defendants received and concealed the proceeds from these Invalid Sales, and took the proceeds from the Invalid Sales and did not pay off the Plaintiff Loans, either at the time of the Invalid Sales or at any time after the Invalid Sales, but, instead, caused balances on the Plaintiff Loans to currently remain outstanding, past due and unpaid.

159. In addition, Primary Defendants did not inform the Plaintiff or Mr. Sheldahl about the sales of subject properties in connection with the Forged Releases at the time

they made the Invalid Sales. Primary Defendants made payments and signed the Loan Extensions for the purpose of keeping the Plaintiff or Mr. Sheldahl from investigating the scheming acts and conduct of the Primary Defendants and/or used the Loan Extensions as a design to prevent any such investigation.

160. As a direct and proximate result of Primary Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT V

## FRAUD (MISREPRESENTATION) AND FRAUD IN THE INDUCEMENT

161. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

162. As described in this Complaint, Rattray, on behalf of himself and other Primary Defendants, represented on many occasions, to Plaintiff's manager, Mr. Sheldahl, commencing in or about 2014 and continuing through the week of filing this Complaint, to the effect that everything was in order with the Plaintiff Loans, that Primary Defendants would be continuing to make payments on the loans and that Hawkeye desired extensions for loans when in reality Primary Defendants had created the Forged Releases and sold the Stolen Parcels to third parties.

163. Primary Defendants induced Plaintiff to enter into the Loan Extensions by concealing the facts that they had Recorded the Forged Releases, entered into the Invalid Sales and consumed or diverted the proceeds of those Invalid Sales.

164. Primary Defendants induced Plaintiff to enter into the Loan Extensions by concealing that they had violated the original Contracts (DoTs, Promissory Notes and Guaranties.)

165. The representations by Rattray were false.

166. The representations by Rattray were material and caused Mr. Sheldahl to believe there was no reason to conduct any investigation of Rattray's or Hawkeye's conduct and caused Plaintiff to execute Loan Extensions.

167. Rattray knew his representations were false.

168. Rattray conduct was intentional and he intended to make Plaintiff and Mr. Sheldahl act in the manner reasonably contemplated to, for example, induce Plaintiff to execute the Loan Extensions.

169. The hearer, Mr. Sheldahl, on behalf of Plaintiff did not know Rattray's representations were false.

170. Mr. Sheldahl, on behalf of Plaintiff, relied upon Rattray's representations, by for example, executing the Loan Extensions.

171. Mr. Sheldahl had the right to rely on Rattray's representations as he is the bona fide agent of Hawkeye.

172. Plaintiff suffered consequent and proximate injury as the result of Rattray's representations, for example, loss of clear title for the Deeds of Trust to the Stolen Parcels, loss of the funds which should have been used to pay the Loans from the

33

proceeds of the sales of the Stolen Parcels and other damages as described in this Complaint.

### COUNT VI

### FRAUDULENT CONCEALMENT

173. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

174. As described in this Complaint, Rattray, on behalf of himself and Hawkeye, concealed material facts from Plaintiff that in equity and good conscience should be disclosed including the execution and recordation of the Forged Releases and the sale of the Stolen Parcels to third parties.

175. Rattray, on behalf of himself and Hawkeye, knew that such material facts were being concealed from Plaintiff and Mr. Sheldahl.

176. Plaintiff and Mr. Sheldahl did not know, and were ignorant of the fact, that such material facts were being concealed.

177. Rattray, on behalf of himself and Hawkeye, intended that the concealment be acted upon by Plaintiff by for example not investigating their conduct and by executing the Loan Extensions.

178. Plaintiff suffered consequent and proximate injury as the result of Rattray's concealment, for example, loss of clear title for the Deeds of Trust to the Stolen Parcels, loss of the funds which should have been used to pay the Loans from the

proceeds of the sales of the Stolen Parcels and other damages as described in this Complaint.

**COUNT VII**

**UNIFORM FRAUDULENT TRANSFER ACT**

**[A.R.S. § 44-1044]**

179. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

180. Primary Defendants made transfers and incurred obligations, the Invalid Sales, which were fraudulent as to creditors including Plaintiff with the actual intent to hinder, delay or defraud Plaintiff within the meaning of A.R.S. §44-1001(A)(1) as described in this Complaint.

181. Primary Defendants also conspired to make the foregoing transfers, the Invalid Sales, and incur the foregoing obligations by planning and agreeing with one another to take those actions.

182. The transfers and obligations include, without limitation, the transfers of an interest in real property embodied in the Forged Releases, transfers of the Stolen Parcels to third parties by the Invalid Sales, transfers of the funds received in connection with the sale and/or other transfers of the Stolen Parcels and granting at least one deed of trust to a third party upon at least one of the Stolen Parcels.

183. The actual intent to hinder, delay or defraud any creditor is evidenced by, including without limitation, (i) the Primary Defendants or some of them, retained possession

or control of the property after the transfer, (ii) the transfers and obligations were concealed and not disclosed, (iii) the Primary Defendants or some of them have absconded, (iv) prior to at least some of the transfers and obligations, the Primary Defendants or some of them were sued or threatened with suit, (v) have removed or concealed assets, (vi) have lied to Plaintiff and its manager about their conduct and (vii) the Primary Defendants or some of them have committed crimes in violation of state and federal law.

184. As the result of the conduct of the Primary Defendants as described in A.R.S. §44-1004(A)(1), Plaintiff has suffered damages in an amount to be determined in this action.

**COUNT VIII**

**<u>DECLARATORY JUDGMENT</u>**

185. Plaintiff realleges and incorporates by reference each of the previous allegations as if fully set forth herein.

186. Based on the foregoing allegations, Plaintiff seeks declaratory relief and respectfully requests the Court to declare Plaintiff's DoTs are superior in priority (a) to any liens encumbering any of the Stolen Parcels created on or after the date of the respective DoTs for each such parcel, and (b) to the rights of any transferee of the Stolen Parcels, and (c) to any rights of any other person or entity as may be appropriate.

187. Pursuant to the Uniform Declaratory Judgments Act, A.R.S. § 12-1831 *et seq.,* this Court has the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed" and the decision of the Court shall have the force and effect of a final judgment.   A.R.S. § 12-1831.

188. Any party to a contract may ask the Court to determine its rights pursuant to  a contract.  A.R.S. § 12-1832.

189. Plaintiff has suffered damages by the necessity of filing this action including attorney fees and costs.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

WHEREFORE, Plaintiff requests that the Court enter judgment against the Defendants and in favor of the Plaintiff as follows:

     a.  For all compensatory, consequential, and incidental damages in an amount to be proven at trial or otherwise determined in this action;

     b.  For all other actual damages;

     c.  For all three-fold and any other damages recoverable under Plaintiff's RICO claim;

     d.  For all punitive damages allowed;

     e.  For all damages permitted and provided by A.R.S. §33-420, including treble damages, and further, for relief to clear title to the parcels or properties that are the subject of the fraudulent Releases of Deeds of Trust,

such that it is declared Plaintiff has the only true legal title to said

properties;

f.   In the alternative, and if elected by Plaintiff, rescission of Agreements or

any other damages allowed with rescission;

g.   For declaratory judgment;

h.   For pre-judgment and post judgment interest as allowed by law;

i.   All equitable relief as allowed by law;

j.   For attorneys' fees and costs as permitted by A.R.S. §§ 12-341 and 12-

341.01, and any other applicable law;

k.   For such other and further relief as may be requested by Plaintiff ,

permitted as a matter of law, which may become known through

discovery and/or deemed appropriate by this Court; and

l.   For such other relief as this Court may deem proper.

**DATED** this 24th day of April, 2018.

**GOLDMAN & ZWILLINGER PLLC**

*/s/ Carolyn Goldman*
Carolyn Goldman
Mark D. Goldman
Scott H. Zwillinger
Joseph V. Aulicino
17851 North 85th Street, Suite 175
Scottsdale, AZ  85255-6567
*Attorneys for Plaintiff*
*Sierra Resource LLC*

1 | Carolyn Goldman (AZ Bar No. 016440)
2 | Mark D. Goldman (AZ Bar No. 012156)
  | Scott H. Zwillinger (AZ Bar No. 019645)
3 | Joseph V. Aulicino (AZ Bar No. 032836)
4 | **GOLDMAN & ZWILLINGER PLLC**
  | 17851 North 85th Street, Suite 175
5 | Scottsdale, AZ  85255-6567
  | Main:  (480) 626-8483
6 | Facsimile:  (480) 502-7500
7 | Main court material email:
  | *docket@gzlawoffice.com*
8 | Attorneys for Plaintiff
9 | Sierra Resource, LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Sierra Resource, LLC, an Arizona limited liability company, | Case No.: |
| Plaintiff, | **VERIFICATION OF ERIC SHELDAHL OF THE ALLEGATIONS MADE IN THE VERIFIED COMPLAINT** |
| v. | |
| Jon Rattray, a/k/a Jon R. Rattray and Jane Doe Rattray, husband and wife; Hawkeye Real Estate Services, LLC, an Arizona limited liability company; Arizona Mound Company, LLC, an Arizona limited liability company; Jonathan Ladd and Jane Doe Ladd, husband and wife; Rafael Bautista Navarrete and Jane Doe Navarrete, husband and wife; Ralph Dan Ashworth and Deborah Suzanne Ashworth, husband and wife; Leonard Mattingly and Michelle Mattingly, husband and wife; Carl D. Hughes and Cecelia D. Hughes, husband and wife; William Maynard Thyng and Jane Doe Thyng, husband and wife; | |

1

1    Donald D. Burr and Kara L. Burr,
     husband and wife;
2    Daniel C. Hall and Jane Doe Hall, husband
3    and wife;
     Troy Poitra and Jane Doe Poitra, husband
4    and wife;
5    Maria M. Rivero and John Doe Rivero,
     wife and husband;
6    Richard Sandoval and Jane Sandoval,
7    husband and wife;
     Optimist DOT, LLC, an Arizona limited
8    liability company;
9    Reed H. Kleinman and Alysa M.
     Kleinman, husband and wife;
10   Zachary McKeown and Kristen C.
11   Seaborg, unmarried joint purported title
     holders;
12   Daryl W. Utt and Linda S. Utt, husband
13   and wife;
     Maurice Bell and John Doe Bell, husband
14   and wife;
15   IH6 Property Phoenix, LP, a Delaware
     limited partnership;
16   Parris B. Castillo and Jane Doe Castillo,
17   husband and wife;
     Alexandra Gergen and Michael Gergen,
18   wife and husband; and
19   Jeanette M. Sabo and James E. Sabo, wife
     and husband,
20

21            Defendants.

22

23        1.  I am the sole manager of the Plaintiff, Sierra Resource, LLC;

24        2.  I have read the foregoing Verified Complaint, know the contents thereof, and

25            attest that all of the facts stated therein are true of my own knowledge, except

26            as to any matters which were stated therein on information and belief, and as

27            to those matters, I believe the complaint to be true.

28

                                    2

1     I declare, under penalty of perjury, that the foregoing is true and correct pursuant

2  to 28 U.S.C. §1746.

3

4         **DATED** this 24th day of April, 2018.

5                                                     _____

6                                                     Eric Sheldahl

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3