Carolyn Goldman (AZ Bar No. 016440)
Mark D. Goldman (AZ Bar No. 012156)
Scott H. Zwillinger (AZ Bar No. 019645)
Joseph V. Aulicino (AZ Bar No. 032836)
**GOLDMAN & ZWILLINGER PLLC**
17851 North 85th Street, Suite 175
Scottsdale, AZ  85255-6567
Main:  (480) 626-8483
Facsimile:  (480) 502-7500
Main court material email:
*docket@gzlawoffice.com*
Attorneys for Plaintiff
Sierra Resource, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra Resource, LLC, an Arizona limited liability company,<br><br>      Plaintiff,<br>v.<br><br>Jon Rattray, *et al.*,<br><br>      Defendants. | Case No.:<br><br>**PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE TO ADVERSE PARTY AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>**DECLARATION PROVIDED IN SUPPORT**<br><br>**ASSIGNED TO HON. _____**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff, Sierra Resource, LLC ("Plaintiff") hereby moves for a temporary restraining order without notice pursuant to Rule 65(b)(1) of the Federal Rules of Civil

Procedure freezing the assets and real property holdings of Defendants Jon Rattray ("Rattray"), Hawkeye Real Estate Services, LLC ("Hawkeye"), Arizona Mound Company, LLC, and Jonathan Ladd (together "Primary Defendants") to prevent them from absconding with $2.5 million they stole from Plaintiff through a series of forged releases of deeds of trust recorded with the Maricopa County Recorder's Office in violation of federal and state law. Plaintiff also moves for a hearing on a preliminary injunction to do the same. This remedy is necessary because Primary Defendants are currently engaged in fraudulent and criminal activities and would surely dispose of their assets or flee the jurisdiction if given notice. There is substantial evidence that Defendant Jon Rattray may have already fled Arizona and is in the United Kingdom. This remedy is further called for because Primary Defendants' scheme threatens the homes of untold numbers of innocent Arizonans. This motion is supported by the following memorandum of points and authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   **FACTUAL BACKGROUND**

Plaintiff is a mortgage lender which funds business purpose loans which are secured by residential real property to borrowers who represent that the sole purpose of the loan is a business investment and not for the borrower to occupy as a residence. Complaint, ¶ 6. Primary Defendants are together involved in a scheme to sell encumbered properties free and clear. *Id.*, ¶¶ 54-90.

2

Briefly, the scheme worked this way. Plaintiff loaned money to Hawkeye on 19 separate occasions for the Primary Defendants to buy parcels of real estate. *Id..*, ¶ 63. The subject loans were personally guaranteed by Rattray. *Id.*, ¶ 111. For each loan, Hawkeye executed promissory notes and deeds of trust, which served as security for the loan and named Plaintiff as beneficiary. *Id.*, ¶ 64-65. Rattray and Ladd falsified the signature of Plaintiff's primary agent, Eric A. Sheldahl, on releases of deeds of trust to make it appear to prospective buyers that they were buying parcels free of any lien.[1] *Id.*, ¶ 69. Once the sale was complete, Primary Defendants recorded the phony deed releases with the Maricopa County Recorder. *Id.*, ¶ 78. This conduct deprived Plaintiff of valuable security interests in real property and put Hawkeye in default on all the promissory notes. *See Id.*, ¶¶ 106, 107. In furtherance of their scheme, Hawkeye and Rattray asked Plaintiff for loan extensions and agreed to make several payments to Plaintiff according to these loan extension agreements. *Id.*, ¶¶ 93-97. Due to the default and scheme to defraud, Primary Defendants owe Plaintiff an estimated $2.5 million. *Id.*, ¶¶ 52, 92.

For example, Hawkeye borrowed $50,000 from Plaintiff for the purchase by Hawkeye of 11048 N 28th Drive, Unit 148C, Phoenix, Arizona. Declaration of Eric A. Sheldahl, ¶ 20. On April 19 and 20, 2015, Rattray signed all of the loan papers for the property, including a personal guaranty. *Id.* The original maturity date for the loan

---

[1] The declaration of Rosemarie Urbanski giving her expert opinion on the falsified signatures is attached hereto as Exhibit 2.

3

was October 20, 2015. *Id.* Rattray and Hawkeye requested and Sierra agreed to a series of "extensions" of the loan, starting in October 2015 and continuing until to the present. *Id.* On November 10, 2016, unknown to Plaintiff, Rattray recorded with the Maricopa County Recorder a document purporting to be a "Deed of Full Release and Reconveyance," which purports to be a release of the Deed of Trust and evidence that the $50,000 loan had been paid off. *Id.* Jonathan Ladd had notarized what was purported to be Sheldahl's signature. *Id.* Sheldahl, however, did not sign the release. *Id.* Although the Release was recorded on November 10, 2016, Hawkeye, Rattray and on occasion Arizona Mound Company, LLC, continued to pay payments on the $50,000 loan until March 2018 in an attempt to keep Plaintiff from knowing of the scheme. *Id.* Primary Defendants did this at least 17 more times starting in 2016. *Id.*, ¶ 21.

The Primary Defendants violated federal laws relating to bank fraud and wire fraud in fulfilling their scheme. *Id.*, ¶¶ 81, 99-100. Rattray recently told Sheldahl via email he was in the United Kingdom. *Id.*, ¶ 8. Rattray has business concerns and real property in at least two other states. *Id.*, ¶ 10. Plaintiff is concerned that Primary Defendants, who are already engaged in a fraud scheme, will continue to transfer assets outside of Arizona and dissipate their assets to escape judgment.[2]

Plaintiff seeks immediate relief to enjoin the Primary Defendants from selling, transferring, wasting, encumbering, or otherwise disposing of their assets and property.

---

[2] See also, generally, the declaration of Eric Sheldahl, attached hereto as Exhibit 1.

## II.     PLAINTIFF IS ENTITLED TO AN EX PARTE TEMPORARY RESTRAINING ORDER.

This Court should grant the temporary restraining order because every moment Primary Defendants have is a moment they could use to hide funds they owe to Plaintiff and mislead potential homeowners into buying land free and clear. A temporary restraining order is necessary to ensure that Primary Defendants do not try to move any assets to avoid a $2.5 million debt.

The Court may issue a temporary restraining order without notice if specific facts in an affidavit or verified complaint show that immediate and irreparable harm will result before the adverse party can be heard, and the movant's attorney certifies in writing any efforts to give notice and reasons it is unnecessary. Fed. R. Civ. Pro. 65(b)(1). Courts in this District have granted contested and ex parte temporary restraining orders freezing the assets of defendants who had shown themselves capable of transferring assets to evade creditors. *See, e.g., Merchant Transaction Systems, Inc. v. Necela, Inc.*, 2010 WL 382886 (D.Ariz. 2010); *see also Hudson Ins. Co. v. Simmons Const., LLC*, 2012 WL 869383 (D.Ariz. 2012).

A court must grant relief if a party shows "a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Immigrant Assistance Project of the Los Angeles County Fed'n of Labor v. Immigration and Naturalization Serv.*, 306 F.3d 842, 873 (9th Cir. 2002). These two alternatives are opposite ends of a

single continuum where the showing of harm varies inversely with the likelihood of success on the merits. *Rodeo Collection Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987). The temporary restraining order is appropriate to preserve the status quo and prevent irreparable harm. *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Courts typically consider four factors in deciding whether to grant injunctive relief: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if the relief is not granted; (3) balance of hardships in favor of the plaintiff; and (4) public policy favors the injunction. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F.Supp. 1238 (D. Ariz. 1981), *aff'd* 681 F.2d 1159 (9th Cir. 1992).

Plaintiff satisfies all four factors.

### A. Plaintiff Demonstrates a Strong Likelihood of Success On the Merits.

Plaintiff is likely to succeed on the merits on its RICO claim, its state law false documents claim, and its other claims.

#### 1. Plaintiff Is Likely to Succeed On Its RICO Claim.

To plead a violation of RICO, a plaintiff must show that a defendant participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity… [that is] (5) the proximate cause of harm to the victim." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (internal citations omitted).

6

Defendants engaged in conduct, falsifying documents, recording documents, and making payments in furtherance of its scheme. Plaintiff's handwriting expert declares that it is probable that Sheldahl did not sign the releases of deeds of trust. According to ASTM guidelines, "probable" means the likelihood that Sheldahl did not sign the documents is strong. Who else but Primary Defendants would benefit from forging Sheldahl's signature? Primary Defendants then recorded or caused to be recorded the false releases with Maricopa County. Primary Defendants' actions were deliberate and intended to deceive.

Plaintiff satisfies the second RICO element by showing that Primary Defendants engaged as an enterprise. An enterprise requires an ongoing organization, formal or informal, and evidence that the associates function as a continuing unit. *United States v. Turkette*, 452 U.S. 576, 583 (1981). An enterprise requires a common purpose, a structure or organization, and longevity needed to accomplish the purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Here, Primary Defendants operated as a team, using corporate structure, to achieve a common purpose of selling land free and clear without Plaintiff's knowledge. Primary Defendants did this over the course of at least eight months. Primary Defendants qualify as an enterprise.

Primary Defendants engaged in a pattern of activity. The RICO statute defines pattern as "at least two acts of racketeering activity." U.S.C. § 1961(5). There also must be a "threat of continuing activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14 (1985). By any measure, using the wires to perpetuate fraud on at least 18

occasions is more than enough to establish a pattern.  Further, this scheme could continue indefinitely with any number of properties.

Primary Defendants falsified documents and used U.S. wires in a scheme to defraud Plaintiff, satisfying the fourth requirement.  The predicate acts here, wire fraud, requires the formation of a scheme to defraud, use of United States wires in furtherance of the scheme, and specific intent to deceive.  18 U.S.C. § 1343, *see Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986).  Specific intent can be found when a scheme exists that is "reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Green*, 745 F.2d 1205 (9th Cir. 1984).  Primary Defendants forged signatures in an attempt to deceive buyers and the State, showing that Primary Defendants had specific intent to defraud.  The fraudulent activities included concealing material facts from Plaintiff and misrepresenting the status of Plaintiff's liens.  Primary Defendants formed this scheme to devise a way to sell properties without notifying Plaintiff.  Primary Defendants used interstate internet communications and wire transfers specifically to perpetuate the scheme, namely by recording the deed releases online, making interstate communications to deceive Plaintiff, and by sending and accepting money by wire.

Finally, the conduct must cause harm to Plaintiff.  The Primary Defendants harmed Plaintiff, as alleged elsewhere, by depriving Plaintiff of its lien interest on the properties.  Primary Defendants' scheme also constitutes a breach of all of its contracts

8

with Plaintiff. Primary Defendants' activities are the proximate cause of Plaintiff's injury.

### 2. **Plaintiff Is Likely to Succeed On Its State Law Claims.**

Plaintiff also alleges, among other counts, that Primary Defendants violated state law regarding false documents. A.R.S. § 33-420(A) provides:

> A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

Primary Defendants recorded the forged deed releases to claim free and clear interest in the properties. The releases were forged, as confirmed by handwriting expert Rosemarie Urbanski. Primary Defendants knew or had reason to know that the releases were forged because they were the only ones who could benefit from this scheme. Plaintiff has a strong likelihood to succeed on its state law claims as well as its RICO claims.

### B. **Plaintiff Will Suffer Irreparable Harm If the Temporary Restraining Order Is Not Granted.**

Irreparable harm exists when the plaintiff cannot be fully made whole by monetary damages alone. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987). Irreparable harm can also result when money damages would be an inadequate remedy because there is a substantial danger that the defendants would transfer or

9

conceal funds, making them unavailable to the plaintiff. *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994).

Here, Plaintiff will suffer irreparable harm in two ways if the temporary restraining order is not granted. It will lose its liens, lien priority, and ownership of properties sold and not yet sold by Rattray. Rattray has already sold at least 18 properties under false pretenses. Each property sold is unique, and neither the properties themselves nor the security interests upon them can be replaced with monetary damages. Moreover, in Arizona law, if the court finds a valid interest, "an irreparable injury is presumed to follow if the interest is not protected." *Compass Bank v. Hartley*, 430 F.Supp.2d 973, 983 (D.Ariz. 2006). Plaintiff's interests in the properties, by way of the liens, deserve this Court's protection. Defendants should be enjoined from transferring the property at issue here until liability is established.

Plaintiff is also in substantial danger of losing its opportunity to make good on its future judgment if Primary Defendants are allowed to transfer funds. *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d at 1480. Primary Defendants have demonstrated that they are capable of large-scale deception, forgery, and criminal acts. Primary Defendants' wire fraud violations would carry prison sentences of 30 years if convicted. 18 U.S.C. § 1343. Primary Defendants, among them, have several closely-held companies to which they can funnel money. Primary Defendants have demonstrated that they are flight risks, even going overseas. Further, the sheer size of

Plaintiff's claim makes it even more likely that Primary Defendants will engage in further dissipation to deny Plaintiff its recovery.

The harm to Plaintiff is immediate and not speculative. Courts have found that harm is immediate when the "adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (internal quotations omitted). Courts may consider evidence that defendants made off with funds in the past. *In re Focus Media, Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004). Primary Defendants' actions up to this point are the fundamental equivalent of disposing of evidence. Primary Defendants hid money from Plaintiff and used falsely recorded deed releases to hide their tracks. Moreover, Primary Defendants are in default on all of their promissory notes, making it more likely that they will dissipate their assets. This Court found it sufficiently likely that a construction company would dissipate its assets when it was in default on four of five projects. *Hudson Ins. Co. v. Simmons Const., LLC*, 2012 WL 869383 at *2 (D.Ariz. 2012). Primary Defendants' actions to this point suggest that their efforts to deprive Plaintiff of any assets to levy a judgment against will only intensify. The Court should find that Plaintiff will suffer immediate irreparable harm if relief is not granted.

**C.    The Balance of Hardship Tips in Plaintiff's Favor.**

The Court's duty in analyzing this factor is to "balance the interests of all parties and weigh the damage to each." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football*

*League*, 634 F.2d 1197, 1203 (9th Cir. 1980).  Plaintiff stands to lose $2.5 million and interest to 18 properties if the temporary restraining order is not granted.  Plaintiff's business is fundamentally threatened by the prospect of a loss of that magnitude.  Plaintiff's hardship if the Court does not grant its plea more than outweighs the harm of temporarily freezing Primary Defendants to ensure that the status quo is maintained.

### D. Public Policy Favors Granting the Temporary Restraining Order.

Plaintiff does not anticipate any effect on non-parties from granting the Temporary Restraining Order.  Public policy is strongly in favor of granting Plaintiffs relief.  The State of Arizona has a strong interest in ensuring that homebuyers can trust that they are buying properties free and clear.  The home market is an essential part of Arizona's economy and public confidence in it is paramount.  The Court has a chance to send a clear message that bad actors who fraudulently convey properties should not profit from their misdeeds.  Moreover, there is every reason to believe that Primary Defendants are defrauding other lenders in the same way.  This Court should ensure that Primary Defendants are unable to get away with deceiving Arizonans.

### E. Giving Notice Is Not Required And Would Harm Plaintiff.

Temporary restraining orders without notice are proper in cases where "notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  Plaintiffs can show this requirement by demonstrating that defendants are likely to defeat the purpose of a

hearing before one can be held.  Plaintiffs can show that defendants' history of deceit or disposing of evidence makes them likely to abscond with or dispose of money.  *Id.*

As stated in the attached certification, Plaintiff's attorney has not given notice to Defendants.  Notice is not required in this case because notice would defeat the purpose of the Temporary Restraining Order.  Fed. R. Civ. Pro. 65(b)(1)(B).  Primary Defendants have shown themselves capable of forging signatures to fraudulently convey property.  Primary Defendants would without doubt use any notice to work to hide their ill-gotten gains.  Primary Defendants have apparent ability to funnel money and to flee this Court's jurisdiction.  Notice would be destructive to the chances of Plaintiff's being made whole.

**F.    The Court Should Freeze Defendants' Accounts and Real Property To Ensure That Plaintiff Is Not Irreparably Harmed.**

This Court has the power to freeze assets when it is shown there is a likelihood of dissipation of the claimed assets or other inability to recover monetary damages if relief is not granted.  *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).  Especially in cases where an individual is capable of placing assets out of reach of a creditor, freezing them is appropriate.  *Neighborhood Assistance Corp. of America v. First One Lending Corp.*, 2013 WL 12113414 (C.D.Cal. 2013).  Plaintiff has an equitable interest in securing the property for which it is or was a beneficiary.  Plaintiff has shown that Primary Defendants are likely to make funds unavailable to Plaintiff if given notice.  Primary Defendants have demonstrated an ability to evade judgment and have already engaged in illegal acts in furtherance of their scheme.  The Court should freeze Primary

Defendants' assets and real estate holdings to ensure that Plaintiff's right to recover its damages is not threatened.

### G. No Bond Should Be Required for the Requested Relief.

Plaintiff believes that the amount to pay the costs and damages sustained by Defendants in this action would be so low as to make a bond unnecessary. In the alternative, Plaintiff is willing to pay a bond set by the Court.

### III. CONCLUSION.

Plaintiff requests that this Court grant the attached Temporary Restraining Order against Primary Defendants, freezing Primary Defendants' assets and preventing Primary Defendants from transferring real property. Plaintiff also requests that all other Defendants be enjoined from transferring their interests in property sold as part of the scheme. Plaintiff further requests that an order to show cause why a preliminary injunction should not be granted be issued and a hearing be set as soon as possible.

**DATED** this 24th day of April, 2018.

          **GOLDMAN & ZWILLINGER PLLC**

    By: */s/ Carolyn Goldman*
        Carolyn Goldman
        Mark D. Goldman
        Scott H. Zwillinger
        Joseph V. Aulicino
        17851 North 85th Street, Suite 175
        Scottsdale, AZ  85255
        *Attorneys for Plaintiff*