IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sierra Resource, LLC, | No. CV-18-01264-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Jon Rattray, et al., | |
| Defendants. | |

      Plaintiff Sierra Resource, LLC is an Arizona mortgage banker. Between 2014 and 2015, Sierra issued 19 loans to Hawkeye Real Estate Services, LLC for the purchase of individual parcels of real property. Each loan was secured by a deed of trust and guaranteed by Hawkeye's principal, Jon Rattray. Sierra claims that in 2016, Rattray forged releases of the deeds of trust, which were notarized by Jonathan Ladd. Rattray and/or Ladd then recorded the releases and sold the properties as though title was free and clear. In order to conceal the property sales, Rattray, Ladd, Hawkeye and/or Arizona Mound Company, LLC continued to make loan payments to Sierra, the last payment of which was made in March 2018. Sierra states that the total outstanding principal balance of Hawkeye's loans is $2,357,012.

      On April 25, 2018, Sierra filed a complaint against 42 defendants - Jon and Jane Doe Rattray, Hawkeye Real Estate Services, LLC, Arizona Mound Company, LLC, Jonathan and Jane Doe Ladd, Rafael and Jane Doe Navarrete, Ralph and Deborah Ashworth, Leonard and Michelle Mattingly, Carl and Cecelia Hughes, William and Jane

Doe Thyng, Donald and Kara Burr, Daniel and Jane Doe Hall, Troy and Jane Doe Poitra, Maria and John Doe Rivero, Richard and Jane Sandoval, Optimist DOT LLC, Reed and Alysa Kleinman, Zachary McKeown and Kristen C. Seaborg, Daryl and Linda Utt, Maurice and Jane Doe Bell, IH6 Property Phoenix, LP, Parris and Jane Doe Castillo, Alexandra and Michael Gergen, Jeanette and James Sabo, as well as fictitiously named individuals and entities. (Doc. 1.) Sierra brings eight claims against Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I); recording of false documents in violation of Ariz. Rev. Stat. § 33-420 (Count II); breach of contract (Count III); breach of the covenant of good faith and fair dealing (Count IV); fraud (Count V); fraudulent concealment (Count VI); violations of the Arizona Uniform Fraudulent Transfer Act, Ariz. Rev. Stat. § 44-1044 (Count VII); and declaratory judgment under the Arizona Uniform Declaratory Judgments Act, Ariz. Rev. Stat. § 12-1831 (Count VIII).

Presently at issue is Sierra's motion for an *ex parte* temporary restraining order: (1) enjoining "Defendants Jon Rattray, Hawkeye Real Estate Services, LLC, Arizona Mound Company, LLC, and Jonathan Ladd, their officers, agents, servants, employees, and attorneys and any other person acting in active concert or participation with any of them, …. from selling, transferring, wasting, encumbering, or otherwise disposing of their assets and property, except in limited circumstances to pay everyday expenses and legal fees;" (2) binding "[a]nyone with access to property or assets of these Defendants" to the terms of the order of injunction, "including without limitation, Chase Bank, MidFirst Bank, and Great Western Bank"; and (3) enjoining all Defendants "from transferring their interests in or encumbering property that was secured by the deeds of trust referenced in Plaintiff's Complaint." (Doc. 9-1 at 2-3.)

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its

favor; and (4) an injunction is in the public interest.[1] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Unlike a preliminary injunction, *see* Fed. R. Civ. P. 65(a), a temporary restraining order ("TRO") may be entered "without written or oral notice to the adverse party," Fed. R. Civ. P. 65(b). A TRO may issue, *ex parte*, only where there are: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Here, Sierra does not show that immediate and irreparable harm will result in the absence of injunctive relief. Although the complaint demands various forms of relief, effectively, Sierra seeks to recover the outstanding amount of Hawkeye's loans – approximately $2,500,000. For purposes of an injunction, economic loss is rarely an irreparable harm because the injury can be remedied by an award of damages. *See Stanley v. Univ. of Calif.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985). To avoid this general principle, Sierra argues that, in the absence of injunctive relief, it will suffer an irreparable "loss of interests in properties it holds beneficial title to." (Doc. 9-1 at 1.) The real properties in which Sierra claims a lien interest, however, have already been sold and transferred to individual buyers. And although Sierra names these "Invalid Title Holder[s]" as defendants, it does not identify any legal basis which would allow it to recover the properties from them or

---

[1] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff… so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

enforce its lien interest against them. Similarly, while Sierra "believes that some, even many, of the Invalid Title Holder Defendants have obtained loans secured by deeds of trust encumbering their respective Stolen Parcel[s]" (Doc. 1 ¶ 44), and seeks a declaration of lien priority (id. ¶ 186), it does not name those lenders as defendants, nor does it point to any new or imminent threat to its lien interests that warrants immediate *ex parte* injunctive relief.

Sierra next argues that, absent injunctive relief, it will be unable to recover a judgment awarded by the Court, causing it irreparable harm. It maintains that once "Rattray and the other Defendants have notice of this action prior to entry of a temporary restraining order that they will secrete the proceeds of the sales of the real properties and move the proceeds from this jurisdiction and continue to fraudulently transfer assets and property to the detriment of Plaintiff and third parties such as purchasers, lenders and title companies." (Doc. 1-4 at 2; Doc 2-4 at 2.)

Although the allegations presented show a pattern of fraud or theft, they do not demonstrate that there is a likelihood that Defendants will imminently flee this Court's jurisdiction or dispose of their assets such that a comprehensive injunction freezing assets is required. *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (an injunction freezing assets may issue where there is "a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."); *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1480 (9th Cir. 1994) (an injunction freezing assets may issue "due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment."). Sierra does not allege that Defendants have transferred or structured the sale proceeds or other assets in such a manner to hide them from the Court or place them out of its reach. *Cf. Johnson*, 572 F.3d at 1085 ($35 million dollars from an employee stock ownership plan had been diverted into a personal bank account); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003) (history of fraudulent transfers and "refusal to disclose asset information in defiance of court order"); *FTC v.*

4

*Affordable Media, LLC*, 179 F.3d 1228, 1236–37 (9th Cir. 1999) (defendants had a "history of spiriting their commissions away to a Cook Islands trust" designed to frustrate judicial power to grant relief). The fact that "Rattray recently told Sheldahl via email he was in the United Kingdom" or that he has real property in other states is not evidence that, if notified of this action, "Rattray and the other Defendants" possess both an intent and the capability to pursue an immediate and elevated course of action to dispose of their assets to shield them from judicial action. (Doc. 2 at 4.) Sierra's allegations instead suggest the contrary; Sierra indicates that Rattray has continued to communicate via telephone, email and facsimile regarding his location and his ongoing intent to make loan payments, and has continued to make loan payments via wire transfers from FDIC insured banks. (*See* Doc. 1 ¶¶ 59, 115.) Without more, the allegations are insufficient to demonstrate that the dissipation of assets is so likely, rather than merely possible, that a swift and sweeping asset freeze is justified. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) ("consequences must not be too remote, insubstantial, or speculative and must be supported by evidence"); *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) ("[s]peculative injury does not constitute irreparable injury").

Further, the balance of interests does not weigh in Sierra's favor. While an injunction might safeguard Sierra's ability to collect on a judgment awarded, the instant request is not minimal or narrowly tailored to meet that objective. The proposed injunction would broadly freeze all properties and assets of numerous individuals and entities, including attorneys yet to be hired, and defendants yet to be identified. (*See* Doc. 1 ¶ 47 (describing fictitiously named defendants as parties "who conspired with, or aided and abetted, the Defendants or otherwise participated in the fraudulent transfers and whose names may be learned through discovery or otherwise").)  In support of this request, no evidence has been presented which links the sale proceeds to any particular account or property, much less to the general asset holdings of any one particular enjoined individual or entity. *Cf. Johnson* 572 F.3d at 1086 (observing that asset freeze

was limited to those assets in which plaintiffs had an equitable interest). Such a widespread injunction would prejudice the numerous Defendants more than a denial of relief would prejudice Sierra.

In short, Sierra fails to meet its burden to demonstrate that it is entitled to immediate injunctive relief, and its request for a TRO will be denied. Any request for a preliminary injunction must be made by separate motion,[2] to which Defendants will be afforded an opportunity to respond. Accordingly,

**IT IS ORDERED** that the Motion for a Temporary Restraining Order (Doc. 2) is **denied.**

**IT IS FURTHER ORDERED** that the Motion for Referral (Doc. 12) is **denied as moot**.

Dated this 3rd day of May, 2018.

Honorable Steven P. Logan
United States District Judge

---

[2] Sierra's request that Defendants be called to show cause why a preliminary injunction should not issue is also denied. This request improperly shifts the burden for seeking an injunction, which resides with the moving party.